IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

PEERLESS INSURANCE COMPANY             PLAINTIFF

vs.             CIVIL ACTION NO.: 3:21cv35-GHD-RP

BAY DESIGN, INC., BAY INDUSTRIAL
GROUP, INC., BAY AUTOMATION,
INC., XL INSURANCE AMERICA, INC., AND
ERIC FARMER             DEFENDANTS

## COMPLAINT FOR EQUITABLE AND DECLARATORY RELIEF

Plaintiff, Peerless Insurance Company ("Peerless" or "Plaintiff"), by its undersigned attorneys, hereby states the following in support of its complaint for equitable and declaratory relief against Defendants, Bay Design, Inc., Bay Industrial Group, Inc., Bay Automation, Inc., (with all said companies, hereinafter, collectively, being referred to as "Bay Design"), Eric Farmer ("Famer"), and XL Insurance America, Inc. ("XL") (collectively, referred to, hereinafter, as "Defendants").

## NATURE OF THE ACTION

1. This is an action seeking equitable and declaratory relief. More specifically, Umbrella Policy No. CU 8750065 (the "Umbrella Policy") issued by Peerless to Bay Design should be reformed to eliminate the language on the declarations pages respecting Products/Completed Operations Aggregate Limit language, because the parties to the Umbrella Policy did not intend that it would provide products/completed operations coverage. Products/completed operations coverage was intended by the parties to be excluded from coverage, as demonstrated by the products/completed operations exclusion contained in the Umbrella Policy. Upon the reformation of this Umbrella Policy, a declaratory judgment should

be entered, indicating that the Products/Completed Operations Aggregate Limit language on the declarations pages of the Umbrella Policy is, for purposes of determining coverage thereunder, not included within the Umbrella Policy terms and, therefore, need not be considered in determining whether Peerless has an obligation to defend and/or indemnify Bay Design for claims brought by Farmer and XL in an action, entitled *Farmer, et al. v. Bay Industrial Group, Inc.,* Civil Action No. 3:19cv283-NBB-RP, that is presently pending the United States District Court for the Northern District of Mississippi (hereinafter, referred to as the "Underlying Lawsuit"). Additionally, if the relief referenced above is awarded and the Umbrella Policy is reformed to eliminate the language on the declarations pages respecting Products/Completed Operations Aggregate Limit language, then Peerless further requests that the Court declare that Peerless has no duty to defend, indemnify, and/or pay any potential judgment rendered against, or settlement entered into by, Bay Design, with regard to the Underlying Lawsuit, due to the Umbrella Policy's exclusion for Products/Completed Operations.

2. Consequently, this action is brought for equitable and declaratory relief under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201. Plaintiff seeks a declaration of its rights, as indicated herein, which presents questions of an actual controversy that presently exists between Plaintiff and Defendants.

**PARTIES**

3. Peerless is a corporation organized under the laws of New Hampshire, with its principal place of business in Massachusetts. Peerless is the insurer that issued the Umbrella Policy to Bay Design.

4. Upon information and belief, Bay Design, Inc. is a corporation organized under the laws of Maryland, with its principal place of business in Maryland. It is also a named

defendant in the Underlying Lawsuit and has requested that Peerless provide it with coverage under the Umbrella Policy. It may be served with process upon its agent for service of process, Karen Brown, 18736 Spooks Hill Road, Parkton, MD 21120.

5. Upon information and belief, Bay Industrial Group, Inc. is a corporation organized under the laws of Maryland, with its principal place of business in Maryland. It is also a named defendant in the Underlying Lawsuit and has requested that Peerless provide it with coverage under the Umbrella Policy. It may be served with process upon its agent for service of process, Karen Brown, 18736 Spooks Hill Road, Parkton, MD 21120.

6. Upon information and belief, Bay Automation, Inc. is a corporation organized under the laws of Maryland, with its principal place of business in Maryland. It is also a named defendant in the Underlying Lawsuit and has requested that Peerless provide it with coverage under the Umbrella Policy. It may be served with process upon its agent for service of process, Karen Brown, 18736 Spooks Hill Road, Parkton, MD 21120.

7. Upon information and belief, Eric Farmer is a natural person, citizen and resident of Senatobia, Mississippi. He is a plaintiff in the Underlying Lawsuit. Upon information and belief, he may have an interest in this matter, as he may intend to seek recovery from Peerless if judgment is entered against Bay Design in the Underlying Lawsuit. He may be served with process at 702B East Gilmore Street, Senatobia, MS 38668.

8. Upon information and belief, XL Insurance America, Inc. is a corporation organized under the State of Delaware, with its principal place of business in Connecticut. Upon information and belief, it may have an interest in this matter, as it may intend to seek recovery from Peerless if judgment is entered against Bay Design in the Underlying Lawsuit. It may be served with process on its registered agent for process, CT Corporation System of Mississippi,

645 Lakeland East Drive, Suite 101, Flowood, MS 39232 or upon the Mississippi Insurance Commissioner.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1), because the amount in controversy, excluding costs and interest, exceeds $75,000 and complete diversity exists between Plaintiff and Defendants to this action.

10. Venue is proper under 28 U.S.C. §1391(b)(2), because: (1) defense and indemnity coverage is being sought by Bay Design for the Underlying Lawsuit, which is pending in this district; and, (2) upon information and belief, Farmer and XL intend to seek coverage for any judgment entered against Bay Design in the Underlying Lawsuit. Consequently, a substantial part of the events, including those giving rise to the claims for defense and indemnity coverage for Bay Design for the Underlying Lawsuit, have occurred in the Northern District of Mississippi. To the extent that §1391(b)(2) is not applicable, then venue would still be appropriate in this district under §1391(b)(3), as the defendants are subject to this Court's personal jurisdiction with respect to this action.

## GENERAL FACTUAL ALLEGATIONS

### Underwriting the Policies

11. In the Underlying Lawsuit, Farmer alleges that he was injured on July 9, 2017 (i.e. the "Injury Date"). Consequently, the issue in the instant action is whether the Umbrella Policy provides coverage to Bay Design for that injury.

12. All policies discussed in this pleading were issued to Bay Design. Under the facts of the instant action, particularly because Bay Design was a Maryland corporation when the

4

policies were issued and delivered, Maryland law controls this dispute and the claims set forth herein.

13. The Umbrella Policy has a policy period of March 13, 2017-March 13, 2018, and therefore, it was in effect on the Injury Date. The Umbrella Policy is attached to this Complaint as **Exhibit 1.**[1] This Umbrella Policy contains a Schedule of Underlying Insurance. On this Schedule of Underlying Insurance, Commercial General Liability Policy No. CBP 8760550 (the "CGL Policy"), which was issued by Excelsior Insurance Company ("Excelsior"), is listed. Excelsior is an insurer that is separate from, but affiliated with, Peerless, as both companies are within the Liberty Mutual Insurance group of companies.

14. Because the underwriting history of the CGL Policy is important to the instant action, it is set forth in detail in this Complaint, particularly with regard to products-completed operations coverage. Although specific policies define what is meant by products-completed operations coverage, it generally provides coverage to an insured, in accordance with a policy's terms, for certain lawsuits alleging injury due specifically to an insured's product or completed operations.

15. The underwriting history for the CGL Policy began in 2004. Prior to that time, Bay Design had insurance with another insurer (i.e. an insurer that was not Peerless; this insurer is referred to herein as the "Prior Insurer"). Upon information and belief, there was no products-completed operations coverage that was provided under the policy issued by the Prior Insurer.

16. In 2004, Bay Design contacted C.A. Weber Agency, Inc. ("Weber") to assist it with its insurance needs. Weber is an independent insurance broker that, as a broker, assists insureds with obtaining insurance. As it relates to the issues and policies in this instant action,

---

[1] Some exhibits to this Complaint contain redactions of certain information out of an abundance of caution. Plaintiff intends to utilize portions of the redactions in its case in chief and will address the production and use thereof with the Court and Defendants at a later time.

Weber, as an insurance broker, submitted underwriting information relating to Bay Design for purposes of obtaining commercial insurance policies; specifically, Weber submitted underwriting information relating to Bay Design to Excelsior for the CGL Policy and later to Peerless for the Umbrella Policy, so that these insurers could determine whether to issue the requested policies, and if so, under what terms and conditions. Weber did not have binding authority with respect to such commercial insurance policies issued by Excelsior and/or Peerless. In other words, Excelsior and Peerless, as insurers, determined whether, and upon what terms, commercial insurance policies would be issued to potential insureds. In addition, Weber did not have the authority to change the terms of an insurance policy after it was issued.

17. In 2004, Excelsior issued the CGL Policy to Bay Design. The CGL Policy had an initial policy period of March 13, 2004 to March 13, 2005, and it was renewed for subsequent policy periods. A copy of the declarations pages for the policy period March 13, 2010-March 2011[2] and all subsequent periods up to, and including, the Injury Date are attached as **Exhibit 2**.

18. From the time of its issuance through the Injury Date, the CGL Policy did not provide products-completed operations coverage. As a matter of fact, on the declarations pages for each policy year from 2012 to the Injury Date, there is a statement on the Commercial General Liability Coverages Part Declarations, which provides:

"**Products/Completed Operations Aggregate Limit EXCLUDED.**"

In addition, on the declarations pages, there is a section that lists the "Forms and Endorsements." In that section of the declarations pages, it lists a policy form that excludes coverage for products/completed operations, which states: "**EXCLUSION-PRODUCTS-COMPLETED OPERATIONS HAZARD.**" Thus, it is clear from the specific terms of the CGL Policy that products-completed operations coverage was not provided under the CGL Policy.

---

[2] Policies prior to 2010-2011 coverage period are no longer available.

19. Weber was aware that the CGL Policy did not provide coverage for products-completed operations. In 2004 and thereafter, Weber, though it's various brokers, reviewed the CGL Policy at the time of its issuance and for each subsequent year. Weber reviewed with Bay Design the fact that products-completed operations coverage was not provided, because such coverage was expressly excluded.

20. Upon information and belief, Bay Design never requested that Weber procure it a policy that provided products-completed operations coverage prior to the Injury Date.

21. Bay Design never contacted Excelsior to request that coverage for products-completed operations coverage be provided under the CGL policy prior to the Injury Date.

22. In fact, Bay Design and Weber made clear that they understood that Bay Design did not have coverage for products-completed operations. More specifically, Scott Burns of Weber indicated, in an email dated September 7, 2004, which is attached as **Exhibit 3,** that Weber was "not providing products liability" for Bay Design.

23. In 2010, Bay Design had discussions with Weber with respect to its insurance coverages. At that time, Weber prepared applications, dated February 11, 2010, on Acord forms for commercial general liability coverage and umbrella/excess coverage. These applications are attached as **Exhibits 4 and 5,** respectively. As indicated on the February 11, 2010 commercial general liability policy application, the application lists "PRODUCTS COMP OP AGGREGATE" as 'EXCLUDED" in one place and states "PRODUCTS & COMPLETED OPERATIONS AGGREGATE  $ EXCLUDED" at another place in the application. In the umbrella/excess section of the application, it notes in the underlying insurance section that "PROD & COMP OPS AGGREGATE  $ EXCLUDED."

7

24. Upon information and belief, Bay Design was aware in 2010, when it applied for these commercial general liability and umbrella/excess policies, that it did not currently carry products coverage and that it would not be obtaining products coverage through Peerless or Excelsior.

25. In 2010, Excelsior issued the CGL Policy to Bay Design. The declarations pages for policy period March 13, 2010-March 2011 are attached hereto as **Exhibit 6.** The CGL Policy itself also noted under "Limits of Insurance" "Products/Completed Operations Aggregate Limit" as "EXCLUDED."

26. During the underwriting process, Weber was repeatedly advised by Peerless and Excelsior that they were not providing products-completed operations coverage to Bay Design.

27. Also, in 2010, Peerless issued the Umbrella Policy. A copy of the Umbrella Policy's declarations pages from the date of issuance to the Injury Date is attached as **Exhibit 7.**

    a. The Umbrella Policy was not intended to provide products-completed operations coverage.

    b. The Umbrella Policy was not rated, for purposes of premium charges, as providing product-completed operations coverage.

    c. The declarations pages that were initially issued for the Umbrella Policy contained two errors. First, the declarations pages did not reference a products-completed operations exclusion that was intended to be included on the Umbrella Policy. Second, the Umbrella Policy referenced that there was a $2,000,000 limit for Products/Completed Operations Aggregate Limit, despite the clear intent of Peerless and the agreement of Bay Design (who had never

8

carried products coverage in recent history). Both errors were the result of clerical mistakes.

    d. Subsequent declarations pages for the Umbrella Policy showed that an exclusion for products-completed operations coverage was included in the Umbrella Policy. Unfortunately, while the exclusion was added, the subsequent declarations pages did not delete the reference to a limit for Products/Completed Operations Aggregate Limit.

28. In 2011, Peerless recognized that it had not included the appropriate products-completed operations exclusion on the Umbrella Policy, and, consequently, took steps to include it on the Umbrella Policy. This was an exclusion that Bay Design, Weber, and Peerless understood was to be included on the Umbrella Policy at the time of its issuance. Thereafter, a products-completed operations exclusion was included on the Umbrella Policy for every policy period up to, and including, the Injury Date. The declarations pages for the Umbrella Policy in effect on the Injury Date included a section that lists the "Forms and Endorsements." In that section of the declarations pages, it lists a policy form that excludes coverage for products/completed operations, which states: "**EXCLUSION-PRODUCTS-COMPLETED OPERATIONS HAZARD.**" That exclusion itself is included in the Umbrella Policy in effect at the Injury Date, Exhibit 1 hereto.

29. The retention of language in the declarations, referencing a Products/Completed Operations Aggregate Limit, was a mutual mistake. Neither Bay Design nor Peerless intended that the Umbrella Policy would provide products/completed operations coverage.

30. By email dated August 25, 2011, attached as **Exhibit 8,** Weber was advised that the Umbrella Policy "was originally written with the intent and agreement that we would write

9

since we were excluding the products. However, the previous underwriter did not attach the proper forms when they issued, so we had to make sure that they were on the renewal policies."

31. By email dated January 3, 2013, attached as **Exhibit 9,** Weber was advised "reminder, we exclude products."

32. By email dated May 31, 2013 and attached as **Exhibit 10,** Elizabeth Carlton, who was acting on behalf of Peerless, advised Weber that products coverage was excluded.

33. Neither Bay Design nor Weber voiced an objection to the inclusion of the products-completed operations exclusion on the Umbrella Policy.

34. Neither Bay Design nor Weber requested that Peerless provide products-completed operations coverage under the Umbrella Policy prior to the Injury Date.

35. Peerless never charged Bay Design for products-completed operations coverage.

36. After the Injury Date, Weber, acting on behalf of Bay Design, asked Peerless whether products-completed operations coverage could be added to Bay Design's account and what the price of such coverage would be. *See* E-mail dated April 5, 2018 and attached as **Exhibit 11.** Neither Bay Design nor Weber ever indicated that they thought that such products-completed operations coverage already existed under the Umbrella Policy.

37. On July 31, 2018, which was after the Injury Date, Bay Design requested that the Umbrella Policy be cancelled.

### Actions of Weber

38. As indicated above, Weber was an insurance broker that represented Bay Design in its dealings with Peerless and Excelsior. As part of its representation of Bay Design, Weber, from time to time, at the request of Bay Design, issued Certificates of Insurance to, or for the benefit of, Bay Design.

39. Beginning in 2016, Weber issued certificates of liability insurance that incorrectly showed that Bay Design had products-completed operations coverage under its commercial general liability policy. These include the following:

   a. An Acord certificate dated August 16, 2016, and attached as **Exhibit 12-1,** that erroneously indicated that there was $2 million in products-completed operations coverage.

   b. An Acord certificate dated March 6, 2017, and attached as **Exhibit 12-2,** that erroneously indicated that there was $2 million in products-completed operations coverage.

   c. An Acord certificate dated March 8, 2017, and attached as **Exhibit 12-3,** that erroneously indicated that there was $2 million in products-completed operations coverage.

   d. An Acord certificate dated March 30, 2017, and attached as **Exhibit 12-4,** that erroneously indicated that there was $2 million in products-completed operations coverage.

   e. An Acord certificate dated June 20, 2017, and attached as **Exhibit 12-5,** that erroneously indicated that there was $2 million in products-completed operations coverage.

   f. An Acord certificate dated January 11, 2018, and attached as **Exhibit 12-6,** that erroneously indicated that there was $2 million in products-completed operations coverage.

40. These certificates of liability insurance did not change the terms of any issued policy, including the Umbrella Policy issued by Peerless. In fact, each of these certificates state,

11

in relevant part: "This Certificate does not affirmatively or negatively amend, extend or alter the coverage afforded by the policies below."

41. Since the filing of the Underlying Lawsuit, Weber has admitted to Peerless and Excelsior that these certificates of liability insurance contained errors with respect to the listed coverage for products-completed operations coverage. Weber has recognized and admitted that the policies issued by Peerless and Excelsior did not contain products-completed operations coverage. Weber has further advised Peerless and Excelsior that it has put its errors and omissions carrier on notice of these error(s).

## The Underlying Lawsuit

42. On or about December 17, 2019, Farmer filed the Underlying Lawsuit. XL, as the workers' compensation insurer, and lien-holder, providing benefits to Farmer, is an intervening plaintiff in the Underlying Lawsuit.

43. On or about March 4, 2020, Farmer amended his complaint to include the Bay Design Defendants,[3] whom he alleges designed and manufactured a machine that caused him injury. The Amended Complaint purports to allege five causes of action: defective design; defective manufacturing; a failure to warn; breach of warranty; and common law negligence. It also seeks damages in excess of the jurisdictional limits of $75,000.00. A copy of the Amended Complaint is attached as **Exhibit 13**.

44. In that Amended Complaint, Famer states:

> 11. At a date and time currently unknown to Plaintiff but sometime prior to July 8, 2017, Defendants BIG, Bay Design and Bay Automation (referred to collectively as "the Bay Defendants") contracted with Carlisle Construction Materials, LLC ("Carlisle"), a non-party, limited liability company that owns and/or operates a plant in Senatobia, Mississippi, which manufactures commercial roofing material. Pursuant to said contract, the Bay Defendants were to design and manufacture a safe and functional large machine called an Apeel Laminator ("the

---

[3] The Amended Complaint retitled the action, *Farmer et al. v. Bay Industrial Group, Inc. et al.*

Bay machine" or "the machine") to be used to wind, unwind and laminate large spools of rubber roofing material, approximately ten (10) feet by one hundred (100) feet in size on Carlisle's "Apeel line" within the Senatobia plant. This machine was designed, manufactured, sold and delivered to Carlisle by one or more of the Bay Defendants with their understanding that it would be used in Carlisle's Senatobia plant with Carlisle employees having open access to use and operate the machine for the purposes previously stated.

12. Employees or agents of each of the Defendants had a role in installing and/or setting up the machine in the Carlisle plant. More specifically, Defendant IPS contracted with Carlisle to supply labor, materials and equipment to install the machine in the Carlisle plant. Defendants Blackwell and Blackwell II (collectively "the Blackwell Defendants") contracted with Carlisle to provide precision laser alignment of the machine and to provide other services related to readying the machine for use in the Carlisle plant. Moreover, after the machine was installed and aligned in the Carlisle plant, one or more agents or employees of one or more of the Bay Defendants was physically present at the Carlisle plant and oversaw the machine's operation and its integration into the plant.

13. On or about July 8, 2017, Plaintiff Eric Farmer, an employee of Select Staffing and a temporary employee of Carlisle, reported to his first day of work at the Carlisle manufacturing plant in Senatobia, Mississippi. He was assigned to work the night shift on the Apeel line which contained the machine that was negligently designed, assembled, installed and integrated into the plant approximately three (3) months prior by the Defendants. At various locations on the Apeel line, Carlisle employees hand taped a protective membrane onto large sheets of rubber roofing material (approximately IO ft. by 100 ft.) that was then pressure laminated and spooled by the machine for shipment. The machine was used to spool and unspool the rubber roofing material at a high rate of speed during this process.

14. At approximately 3:00 a.m. on July 9, 2017, while performing the above-described lamination process, Plaintiff Eric Farmer became caught in between a roller of the machine and the fast moving roofing material that was in the process of being spooled by the machine. Plaintiff Eric Farmer sustained numerous severe, physical injuries to his body which included fractures to both legs, his right arm and shoulder, and six (6) ribs.

45. Bay Design has denied that it is liable to Farmer and XL.

46. Bay Design[4] reported the lawsuit to its insurers, Peerless, who issued Bay Design its Umbrella Policy, and Excelsior, who issued Bay Design its CGL Policy.[5]

---

[4] Bay Design, Inc. and Bay Industrial Group, Inc. are named insureds on both policies.

13

47. On or about July 29, 2020, Excelsior denied coverage to Bay Design. A copy of the denial letter is attached as **Exhibit 14.**

48. Peerless is currently providing a defense to Bay Design, subject to a full and complete reservation of rights. A copy of that reservation of rights letter is attached hereto as **Exhibit 15.**

## This Lawsuit

49. This action, in the first instance, seeks a determination as to whether the language in the declarations pages of the Umbrella Policy, referencing a Products/Completed Operations Aggregate Limit, should be considered part of the Umbrella Policy. More specifically, Peerless has filed this action to have the Umbrella Policy reformed, so that it does not include a Products/Completed Operations Aggregate Limit. Assuming the Umbrella Policy is reformed in that manner, Peerless secondarily seeks a declaration that the Umbrella Policy excludes coverage for Bay Design with respect to the claims asserted against it in the Underlying Lawsuit and that Peerless has no duty to defend, indemnify, and/or pay any potential judgment rendered against, or settlement entered into by, Bay Design in the Underlying Lawsuit, pursuant to the Umbrella Policy's exclusion for Products/Completed Operations.

50. It was the clear intent of Peerless, Bay Design, and Weber that the Umbrella Policy not provide products-completed operations coverage.

51. The Umbrella Policy contains an exclusion for products-completed operations. Consequently, the Umbrella Policy itself indicates that it was the intent of Peerless, Bay Design, and Weber that the Umbrella Policy not provide such coverage.

---

[5] Both the CGL Policy and Umbrella Policy were in effect from March 13, 2017 to March 13, 2018. The Plaintiff does not dispute that the Injury Date occurred during the policy period.

52. The inclusion of the Products/Completed Operations Aggregate Limit language in the declarations pages of Umbrella Policy was a mutual mistake. This mutual mistake, by erroneously including such language, is subject to reformation.

53. If the Umbrella Policy is reformed, so that the Products/Completed Operations Aggregate Limit language is deemed to not be therein, then it would reflect the intent of Peerless, Bay Design, and Weber.

54. If the Umbrella Policy is reformed, so that the Products/Completed Operations Aggregate Limit language is deemed to not be included therein, then the claims asserted against Bay Design in the Underlying Lawsuit are excluded from coverage under the Umbrella Policy, pursuant to the exclusion for Products/Completed Operations.

55. The issues respecting the liability of Bay Design, if any, are the subject of the Underlying Lawsuit and will not be litigated in the instant action.

56. The issues in this action, concerning whether the Products/Completed Operations Aggregate Limit language is part of the Umbrella Policy or whether, under the equitable doctrine of reformation, the Umbrella Policy is reformed, so that this language is no longer in the Umbrella Policy, are issues independent from the tort issues in the Underlying Lawsuit. Likewise, whether or not the Umbrella Policy, once it is reformed as requested, excludes coverage for Bay Design with respect to the claims asserted against it in the Underlying Lawsuit is also independent from the tort issues in the Underlying Lawsuit.

**Count I: Reformation Based on Mutual Mistake of Fact**

57. Peerless incorporates the allegations contained in Paragraphs 1 through 56 as if alleged verbatim herein.

58. The parties to the Umbrella Policy intended that it not provide coverage for products-completed operations.

59. The parties to the Umbrella Policy did not intend to include the language in the declarations pages, which references a Products/Completed Operations Aggregate Limit. Consequently, the inclusion of this language was a mutual mistake of fact.

60. The Umbrella Policy should be reformed, so that it does not include language in the declarations pages referencing a Products/Completed Operations Aggregate Limit.

61. This reformation would be in accordance with the intent of the parties and would correct their mutual mistake of referencing a Products/Completed Operations Aggregate Limit in the declarations pages of the Umbrella Policy.

WHEREFORE, Peerless respectfully requests that this Court reform the Umbrella Policy, so that it does not include language in the declarations pages referencing a Products/Completed Operations Aggregate Limit.

## Count II: Declaratory Judgment

62. Peerless incorporates the allegations contained in Paragraphs 1 through 61 as if alleged verbatim herein.

63. An actual controversy, within the meaning of 28 U.S.C §2201, exists between the parties, as to whether the language in the declarations pages, referencing a Products/Completed Operations Aggregate Limit, is part of the Umbrella Policy.

64. There is an actual controversy between the parties, as to whether the language in the declarations pages, referencing a Products/Completed Operations Aggregate Limit, should have been included in the Umbrella Policy.

65. There is a dispute between the parties, as to whether the language in the declarations pages, referencing a Products/Completed Operations Aggregate Limit, should be removed through reformation.

66. Secondarily, if the Umbrella Policy is reformed and the language in the declarations pages referencing a Products/Completed Operations Aggregate Limit is removed, there is a dispute as to whether the Umbrella Policy provides any coverage for the claims asserted against Bay Design in the Underlying Lawsuit and, consequently, whether Peerless has any duty to defend, indemnify, or pay any judgment rendered against, or settlement entered into by, Bay Design in the Underlying Lawsuit.[6]

67. Thus, there exists an actual controversy of a practicable issue or issues between the parties within the jurisdiction of the Court, involving the rights and liabilities (if any) of the parties, as to the language in the declarations pages, referencing a Products/Completed Operations Aggregate Limit, which may be resolved by a judgment of this Court.

WHEREFORE, Peerless requests the following relief:

A. That this Court declare that the Products/Completed Operations Aggregate Limit language, referenced in the declarations pages of the Umbrella Policy, is not included within the policy terms.

B. That, consequently, this Court further declare that the Umbrella Policy, pursuant to its exclusion for Products/Completed Operations, excludes coverage for Bay Design with respect to the claims asserted against it in the Underlying Lawsuit; that Peerless has no duty to defend, indemnify, or pay any judgment rendered against, or settlement entered into by, Bay

---

[6] The issues raised in this Complaint are specific to the reformation of the contract as further described herein. Peerless continues to fully reserve its rights under The Umbrella Policy as a whole to rely any other terms, conditions, provisions or limitations to the extent they may be applicable to the Underlying Lawsuit, waiving none.

Design with respect to the Underlying Lawsuit; and that Peerless is authorized to immediately withdraw its defense of Bay Design in the Underlying Lawsuit.

  C. That this Court award Plaintiffs the costs of these proceedings and such other and further relief as in law and justice it may be entitled to receive.

  This, the 24th day of February, 2021.

            Respectfully submitted,

            **PEERLESS INSURANCE COMPANY**

      By: */s/ Gregg A. Caraway*
         Gregg A. Caraway (MSB #8443)

**OF COUNSEL:**

**WELLS MARBLE & HURST, PLLC**
Post Office Box 131
Jackson, MS 39205-0131
300 Concourse Blvd., Suite 200
Ridgeland, MS 39157
Telephone: (601) 605-6900
Facsimile: (601) 605-6901
gcaraway@wellsmar.com